# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
MARTIN B. LANE and MAUREEN T. LANE,

                Plaintiffs,

        -against-                  **MEMORANDUM OF DECISION AND ORDER**
                                           10-cv-2435 (ADS)(ETB)

FEIN, SUCH AND CRANE, LLP,

                Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Kleinman, LLC**
*Attorneys for the plaintiffs*
626 RXR Plaza
Uniondale, NY 11556-0626
        By:    Abraham Kleinman, Esq., of Counsel

**Connell Foley LLP**
*Attorneys for the defendant*
85 Livingston Avenue
Roseland, NJ 07068
        By:    Andrew Christopher Sayles, Esq., of Counsel

**SPATT, District Judge.**

        Martin and Maureen Lane, the plaintiffs in this case, assert that the defendant law firm Fein, Such and Crane, LLP ("Fein LLP") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), as well as other laws, in connection with a legal action in New York Supreme Court, Suffolk County brought to foreclose on their property. The defendant now moves to dismiss the plaintiffs' complaint pursuant for Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court grants the defendant's motion.

# I. BACKGROUND

The following facts are either taken from the plaintiffs' complaint or are not disputed by the parties.

The plaintiffs Martin B. Lane and Maureen T. Lane have title to a property at 891 South Bay Street, Lindenhurst, New York (the "Bay Street Property"), which is encumbered by a mortgage (the "Bay Street Mortgage"). Based on documents attached to the complaint, that mortgage appears to be held by Bridgefield Mortgage Corporation ("BMC"), who is represented in foreclosure proceedings in New York Supreme Court, Suffolk County by the defendant Fein LLP. There appears to be some dispute about BMC's title to the mortgage, but the plaintiff makes no allegation in the present complaint that BMC is not entitled to enforce the mortgage contract, and, in any case, the ownership of the mortgage is not material to the outcome of this matter. The Court therefore assumes that BMC holds title to the Bay Street Mortgage.

On April 21, 2010, BMC, through their attorneys Fein LLP, filed a complaint in New York Supreme Court, Suffolk County seeking to foreclose on the Bay Street Mortgage (the "State Court Complaint"). BMC named as defendants both Martin and Maureen Lane, on the basis that (1) Martin Lane had executed the Bay Street Mortgage, and (2) both Martin and Maureen Lane held title to the Bay Street Property. Significantly in this case, the first numbered paragraph of BMC's State Court Complaint states that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States." (Compl., Ex. A, ¶ 1.) The State Court Complaint thereafter proceeds to set forth BMC's basis for foreclosure.

Sometime between April 21, 2010 and April 28, 2010, a process server retained by Fein LLP served the State Court Complaint on only Maureen Lane. On April 28, 2010, both Maureen Lane and Martin Lane then mailed letters to Fein LLP, disputing the validity of the Bay Street Mortgage. The letters do not set forth a basis for challenging the debt, but they do request validation of the mortgage. Eight days later, on May 6, 2010, a process server retained by Fein LLP served the State Court Complaint on Martin Lane.

Twenty days after the State Court Complaint was served on Martin Lane, Martin and Maureen Lane commenced the present action against Fein LLP. The plaintiffs assert causes of action pursuant to (1) the FDCPA; (2) New York State's consumer protection statute, General Business Law § 349; and (3) common law negligence. In support of their claims, the plaintiffs do not contest BMC's underlying right to foreclose on their property. Rather, they assert the following theories: First, they allege that BMC is not in fact "a banking corporation duly licensed, organized and existing pursuant to the laws of the United States", as alleged in the State Court Complaint, and that Fein LLP's statement to the contrary in that pleading is therefore false and misleading. Second, the plaintiffs allege that Fein LLP was obligated to cease its efforts to collect BMC's debt until after it responded to the Lanes' challenges to that debt's validity, and that Fein LLP violated this requirement by serving the State Court Complaint on Martin Lane on May 6, 2010. Finally, the plaintiffs assert that Fein LLP is liable because they "serv[ed] Maureen Lane with a Summons and Complaint and maintain[ed] an action against her without basis." (Compl., ¶ 19(c).)

On August 20, 2010, Fein LLP filed the present motion to dismiss the plaintiffs' complaint in its entirety for failure to state a valid claim, pursuant to Fed. R. Civ. P. 12(b)(6). According to Fein LLP, none of the alleged acts it took violates the FDCPA, GBL § 349, or Fein LLP's common law duties in negligence. The plaintiffs oppose the motion.

## II. DISCUSSION

**A. Standard on a Motion to Dismiss**

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

**B. As to the Plaintiffs' FDCPA Cause of Action**

In their complaint, the plaintiffs identify three specific provisions of the FDCPA that they allege the defendant violated.

- First, the plaintiffs point to 15 U.S.C. § 1692d, which provides, in pertinent part, that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

- The second section allegedly violated is 15 U.S.C. § 1962e, which states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." In particular, the plaintiffs also rely on §1962e(10), which precludes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

- Finally, the plaintiff alleges a violation of 15 U.S.C. § 1962g, which limits a debt collector's right to take actions to collect a debt if a debtor challenges that debt within thirty days after receiving notice of the right to challenge that debt.

For ease of analysis, the Court addresses these three sections in reverse order. However, before proceeding, the Court notes that, in seeking to dismiss the plaintiffs' causes of action under the FDCPA, the defendant does not contest that it is a "debt collector", or that the plaintiffs are "consumers", as those terms are used in the FDCPA.

## 1. As to Section 1962g

Section 1962g states in pertinent part:

(a) Notice of debt; contents

Within five days after the ***initial communication with a consumer in connection with the collection of any debt***, a debt collector shall . . . send the consumer a written notice containing--

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing ***within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed***, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

(d) Legal pleadings

> A communication in the form of a formal pleading in a civil action ***shall not be treated as an initial communication*** for purposes of subsection (a) of this section.

(emphasis added).

In summary, Subsection 1962g(a) establishes a scheme in which, once a debt collector has an "initial communication" with a debtor (a debtor is called a "consumer" in the statute), the debt collector then has five days to communicate in writing to the consumer certain of the consumer's rights concerning the debt. Among the things that the debt collector must tell the consumer in writing is that, if the consumer contests the debt within thirty days, the debt collector will send verification of the debt. Subsection 1962g(b) then provides that, if a consumer timely takes advantage of this right to challenge the debt, the debt collector must cease its efforts to collect the debt until it has sent verification of that debt to the consumer. As an addendum, Subsection 1692g(d) provides that, when a debt collector sends a consumer a legal pleading, this is not an "initial communication" as the term is used in Section 1692g.

According to the plaintiffs, Martin Lane's April 28, 2010 letter to Fein LLP contested the validity of the Bay Street Mortgage, and required Fein LLP to cease efforts to collect on that debt until Fein LLP sent a document to Martin Lane validating the debt. Nevertheless, before responding to Martin Lane's challenge to the Bay Street Mortgage, Fein LLP allegedly caused Martin Lane to be served with the State Court Complaint on May 6, 2010. The plaintiffs assert that serving the State Court Complaint on Martin Lane before responding to his challenge violated the temporary moratorium on collection efforts that Section 1692g provides following a consumer's challenge to a debt.

While numerous courts have addressed the effect of Section 1692g on a debt collector's right to file or serve a complaint, the Court is aware of none that has directly addressed the present situation, in which a consumer challenges a debt *before* the debt collector initiates communication with the consumer. Nevertheless, in the Court's view, the statute itself shows that the plaintiff's theory is without merit.

The first focal point for analyzing the statute in this situation is the "initial communication with a consumer in connection with the collection of any debt" that is described in Subsection 1692g(a). Under the statute, once an "initial communication" between a debt collector and a consumer takes place, the debt collector must within five days inform the consumer of his right to challenge the debt. This in turn starts the thirty day clock during which any challenge to the debt by the consumer will halt collection of the debt, pending the debt collector's verification of that debt to the consumer. Under this scheme, if an initial communication does not take place, the thirty-day clock to challenge the debt never begins to run.

The first question here, then, is whether any "initial communication" is alleged to have taken place between Fein LLP and Martin Lane. The only alleged communications that even arguably took place between Fein LLP and Martin Lane were (1) the service of the State Court Complaint on Maureen Lane (which is only arguably a communication with Martin Lane), and (2) Martin Lane's April 28, 2010 letter to Fein LLP challenging the debt. In the Court's view, neither of these are "initial communications" as that term is used in the statute.

With respect to the service of the State Court Complaint on Maureen Lane, this is readily resolved to not be an "initial communication", as Subsection 1692g(d)

explicitly provides that legal pleadings are not "initial communications". As for Martin Lane's letter to Fein LLP, this might be viewed as an "initial communication with a consumer in connection with the collection of any debt" in some sense of that language. However, the Court cannot conclude that this interpretation would be consistent with the general import of the statute. In the Court's view, by describing the "initial communication" as being "in connection with the collection of any debt" the Congress was identifying an attempt *by the debt collector* to collect the debt. Likewise, while the Court is aware of no cases that discuss whether an "initial communication" could come from a consumer, Section 1692 provides that the purpose of the statute is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged". To impose the obligations of Section 1692g on any debt collector who receives an unsolicited letter from a consumer concerning a debt would, in the Court's view, impose an undue burden on debt collectors who had until then "refrain[ed] from using abusive debt collection practices". Section 1692.

The Court thus concludes that there was no "initial communication" between Fein LLP and Martin Lane. Having decided this, the next question is whether Martin Lane's challenge to the Bay Street Mortgage nevertheless invoked a temporary moratorium on Fein LLP's efforts to collect on the debt. The Court concludes that it did not.

Subsection 1692g(b), which establishes the temporary moratorium on collection efforts, comes into effect only "[i]f the consumer notifies the debt collector in writing *within the thirty-day period* described in subsection (a) of this section that the debt . . .

9

is disputed . . . ." Section 1692g(b) (emphasis added). In turn, that thirty day period commences only after (1) an "initial communication" from a debt collector, followed by (2) a written notice to the debtor of his right to challenge the debt. As noted above, if no initial communication takes place, then the thirty day period never begins running. Critically, the Court reads Section 1692g to require a debt collector to cease its collection actions only if a challenge is made *during* this thirty day window.

Here, Martin Lane challenged the debt before he received any communication from Fein LLP, so the thirty day period described in Subsection 1692g(a) never started running with respect to Martin Lane. Thus, when Martin Lane mailed his debt challenge to Fein LLP, he was not acting within the thirty day period. Instead, he was acting *before* that period. Under the plain language of Section 1692g, such a challenge does not invoke the temporary moratorium on the collection of debts.

Rather than seeing this as an overly technical reading of the statute, the Court views this outcome as consistent with the above-mentioned object of the FDCPA. A consumer who challenges a debt before a debt collector even attempts to collect that debt—not to mention before the debt collector informs the consumer of his right to challenge the debt—is unlikely to be unfairly affected by a debt collector's continued lawful attempts to collect that debt. Also, to the extent that such a debtor wishes to benefit from the collection moratorium provided for in Section 1692g, he may simply mail a renewed challenge to the debt once an initial communication takes place. In addition, to hold that a debtor may invoke the moratorium before receiving an "initial communication" from the debt collector would give a debtor an unintended power to forestall lawsuits by debt collectors who had so far not contacted the debtor. This

appears to be inconsistent with the spirit of the provision in Section 1692g(d) stating that serving a legal pleading itself does not even invoke the duties described in Section 1692g.

The Court therefore finds that the plaintiffs have not stated a cause of action for violation of Section 1692g. The Court thus grants the defendant's motion dismissing this cause of action.

**2. As to Section 1692e**

The plaintiffs also assert a cause of action pursuant to 15 U.S.C. § 1692e, which proscribes the "use any false, deceptive, or misleading representation or means in connection with the collection of any debt". According to the plaintiffs, Fein LLP falsely stated in the State Court Complaint that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States", (Compl., Ex. A, ¶ 1), and this alleged false statement violates Section 1692e. The defendant's primary opposition to the plaintiffs' Section 1692e cause of action is that, even if this statement were false, it is immaterial.

In general, courts analyze whether a statement is false or misleading under the terms of Section 1692e by asking whether the statement would be misleading to the "least sophisticated consumer." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005). The application of the "least sophisticated consumer" standard is "an objective analysis that seeks to protect the naive from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." Id. (internal quotations and citations omitted). In addition, in applying this standard, several courts have also held that a

statement must be *materially* false or misleading to violate Section 1692e. See Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757 (7th Cir. 2009) (Easterbrook, J.) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement. We do not see any reason why materiality should not equally be required in an action based on § 1692e.") (internal citations and paragraphing omitted); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596–97 (6th Cir. 2009) (applying a materiality standard to a Section 1692e claim that was based on alleged misstatements in legal pleadings); Neill v. Bullseye Collection Agency, Inc., No. 08-cv-5800, 2009 WL 1386155, *2 (D.Minn. May 14, 2009) (finding that a letter identifying itself as a "second notice", when it was in fact a third notice, was not materially false or misleading).

Here, in seeking to dismiss the plaintiffs' Section 1692e claim, the defendant asserts:

> Plaintiffs' reliance upon whether BMC is a banking corporation, as compared to a debt collection agency or mortgage loan servicer, does not amount to a deceptive or misleading attempt to collect a debt. To wit, Plaintiffs were in default on his [*sic*] loan obligations, as demonstrated by the absence of a contrary allegation within the Complaint, and the mortgage had been properly assigned to BMC in advance of the Foreclosure Complaint being filed.

(Def.'s Mot. to Dism. at 10.)

The plaintiffs do not respond directly to this assertion by the defendants, but rather suggest, first, that the statement in question—that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States"—"created a false impression of a partnership between the defendant and the state government." (Pls.' Opp. at 8.) Second, the plaintiffs contend that the

12

defendant's statement is misleading because the plaintiffs are "consumer[s] being sued by a company holding [itself] out as a banking corporation, duly licensed, organized and existing pursuant to the laws of the United States of America, when in fact [BMC is] not even the creditor." (Id. at 8–9.) Finally, the plaintiffs assert that the defendant's statement is false because BMC has no standing to sue the plaintiffs.

In the Court's view, none of the plaintiffs' explanations are convincing. First, the Court does not see how the statement in question suggests a false impression of a partnership between BMC and the government. The references to the laws of the United States of America in the defendants' allegedly false statement merely explain BMC's place of incorporation and licensing. This statement does not suggest, even to an unsophisticated consumer, that BMC is acting on *behalf* of the United States.

As for the plaintiffs' second argument, that BMC "is not even [the plaintiffs'] creditor", this argument has little if anything to do with the substance of the statement in question. The statement that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States" does not assert in any way BMC's right to recover with regard to the Bay Street Mortgage. Moreover, the plaintiffs do not otherwise allege any facts challenging BMC's power to do so. Finally, the plaintiffs' argument that BMC has no standing to foreclose on the Bay Street Mortgage similarly not only has nothing to do with the allegedly false statement, but is also not supported by any allegations of fact in the complaint.

The Court therefore concludes that the statement that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United

States", is not materially false or misleading, and thus does not violate Section 1692e. The plaintiff's Section 1692e claim is therefore dismissed.

### 3. As to Section 1692d

Finally, the plaintiffs allege that the defendant violated 15 U.S.C. § 1692d, which provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." In support of this cause of action, the plaintiffs rely again on the service of the State Court Complaint on Martin Lane on May 6, 2010, as well as the allegedly false statement in the State Court Complaint that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States", to show that the defendant harassed them in violation of Section 1692d.

The Court need not spend long on this issue, as the plaintiffs provide no law in support of their contention that these alleged acts arise to the level of harassment, as that term is used in Section 1692d. By way of contrast, Section 1692d lists six non-exclusive examples of harassing conduct, which include the use or threat of violence, the use of profane or threatening language, publicly advertising debts or debtors, and making abusive and repeated telephone calls. In the Court's view, none of the conduct alleged by the plaintiffs is similar in seriousness to any of these examples. Compare, e.g., Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330–31 (6th Cir. 2006) ("Any attempt to collect a defaulted debt will be unwanted by a debtor, but [filing a lawsuit against a debtor] cannot be said to be an abusive tactic under the FDCPA."). The Court therefore finds that the alleged conduct of the defendant was not harassing

under Section 1692d, and dismisses the plaintiffs' Section 1692d cause of action for failure to state a claim.

**C. As to the Plaintiffs' Cause of Action Pursuant to New York GBL § 349**

In addition to their federal claims pursuant to the FDCPA, the plaintiffs also assert that the defendant violated New York's consumer protection statute, which is codified at N.Y. GBL § 349. In support of this claim, the plaintiffs assert that the same conduct that allegedly violated the FDCPA also violated GBL § 349. In addition, the plaintiffs also assert that the service of the State Court Complaint on Maureen Lane violated GBL § 349, as the foreclosure action against her is "without basis." (Compl., ¶ 19(c).)

GBL § 349 provides in pertinent part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Interpreting this statutory language, the New York Court of Appeals has held that "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).

Here, the plaintiffs are unlikely to satisfy any of these three elements. Fein LLP's alleged acts are almost certainly not consumer-oriented, as they affected the plaintiffs alone, and are not likely to have a "broader impact on consumers at large". Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). As for damages, the plaintiffs have

alleged no facts—aside from their conclusion that they suffered emotional distress—that show that the alleged acts of the defendant caused any quantifiable damage.

Most importantly, however, the plaintiffs have not alleged any acts that are materially misleading. Certainly the service of the State Court Complaint on Maureen and Martin Lane is not "misleading." As for the representation in the State Court Complaint that BMC "is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States", the Court has already ruled that this statement is not materially deceptive. It thus follows that this statement is also not materially "misleading." The Court therefore grants the defendant's motion to dismiss the plaintiff's GBL § 349 cause of action for failure to state a claim.

**D. As to the Plaintiffs' Cause of Action for Negligence and Gross Negligence**

The last of the plaintiffs' causes of action is for breach of the "duty of reasonable care in the collection of an alleged and disputed debt", (Compl., ¶ 22), which the plaintiffs assert provides the basis for a cause of action for negligence and gross negligence. Again, in asserting this cause of action, the plaintiffs rely on the same alleged acts of Fein LLP that the Court has described above.

In New York, a cause of action sounding in negligence requires a showing of "duty, breach, damages, causation and foreseeability." Hyatt v. Metro-North Commuter R.R., 16 A.D.3d 218, 792 N.Y.S.2d 391 (1st Dep't 2005). Here, the plaintiffs have not sufficiently plead several of these elements. First, the plaintiffs provide no explanation of what constitutes the "duty of reasonable care in the collection of an alleged and disputed debt", or more importantly, of how the alleged acts by Fein LLP violated this duty. Nor do the plaintiffs assert facts showing how they were

16

damaged by the defendant's alleged carelessness in seeking to foreclose on the Bay Street Mortgage, or showing that any alleged damages were foreseeable to the defendant.

Moreover, as the defendant points out, the plaintiffs' negligence claim is based wholly on (1) the service of a legal complaint on the Lanes, (2) a statement in that legal complaint, and (3) the maintenance of a legal action against Maureen Lane. All of this conduct by Fein LLP was in its capacity as attorney for BMC, and under New York law, no claim lies in simple negligence against an attorney acting on behalf of a client. See, e.g., Doo v. Berger, 227 A.D.2d 435, 436, 642 N.Y.S.2d 694 (2d Dep't 1996) ("The law in New York does not recognize any liability on the part of an attorney to a nonclient third party for injuries sustained as a result of an attorney's actions in representing his client absent fraud, collusion, or a malicious or tortious act"); Michalic by Nakovics v. Klat, 128 A.D.2d 505, 506, 512 N.Y.S.2d 436 (2d Dep't 1987) (dismissing claim for simple negligence on same grounds); Calamari v. Grace, 98 A.D.2d 74, 79, 469 N.Y.S.2d 942 (2d Dep't 1983) ("In the area of attorneys' negligence, New York authorities do not extend liability in situations where the act of misfeasance or nonfeasance may cause injury to a third party with whom there is no privity, provided that the attorney is charged merely with simple negligence"). Thus, no cause of action for negligence may lie against the defendant based on the acts alleged in the plaintiffs' complaint.

As for the plaintiffs' assertion that the defendant is liable for gross negligence, it is true that this cause of action may be brought against an attorney by a non-client. Nevertheless, there is no valid cause of action for gross negligence plead here. Gross

negligence adds an additional prong to the already-present elements of negligence—namely, "that defendant's conduct 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008) (quoting AT & T v. City of New York, 83 F.3d 549, 556 (2d Cir.1996)) (additional internal quotations omitted). Here, even assuming that the plaintiffs had alleged facts sufficient to state a cause of action for negligence, none of the acts alleged rises to the level of satisfying this additional element. The Court therefore dismisses the plaintiffs' cause of action for negligence and gross negligence for failure to state a claim.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion to dismiss is granted in its entirety and the plaintiffs' complaint is dismissed in its entirety, and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 3, 2011

                                                    _/s/ Athur D. Spatt_
                                                     ARTHUR D. SPATT
                                                  United States District Judge